# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 26, 2012

Lyle W. Cayce
Clerk

No. 11-20718

J.H., by next friend A.H. and S.H.,

Plaintiff-Appellant,

v.

FORT BEND INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
4:10-CV-2994

Before DAVIS, OWEN and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In this action under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1414, the parents of J.H., a severely disabled fourteen-year-old child, challenge his placement in a special education class instead of general education classes for social studies and science. J.H. does not argue that the procedure followed by the school district in reaching this decision was inadequate. Because of his placement in the special education class for the two courses noted above, he disagrees with the district court's factual finding that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20718

the educational plan adopted by the school district was appropriate. We find no error and affirm.

## I. Facts

J.H. receives special education services by virtue of his intellectual disability and speech impairment. This suit concerns the time J.H. attended sixth grade at Dulles Middle School in the Fort Bend Independent School District.

J.H.'s evaluations at the beginning of his sixth grade year revealed that he had an I.Q. of 48 and is classified as mentally retarded. His academic achievement scores range from the kindergarten to second grade level. His adaptive behavior score is 59, which is comparable to that of an average child of seven.

Following the procedures set by the Individuals with Disabilities Act, J.H.'s Review and Dismissal Committee (ARDC)[1] met in May 2009 to establish J.H.'s curriculum for his sixth grade year. The ARDC recommended that J.H.'s science and social studies objectives be implemented in a special education, rather than a general education classroom. J.H.'s parents disagreed with this recommendation and J.H. was allowed to begin his sixth grade year in regular education social studies and science classrooms.

Throughout this academic year J.H.'s teachers reported that J.H. was becoming increasingly overwhelmed by the difficulty of the general education classes in social studies and science, and the members of the ARDC continued to recommend–over the parents' objection–that J.H. be placed in special education classrooms. Evaluations were then performed by two independent experts engaged by J.H.'s parents, who agreed with the teachers' evaluation.

---

[1] This committee consisted of J.H.'s parents, a regular education teacher, a special education teacher and a school administrator.

No. 11-20718

The school district then accepted the ARDC's placement recommendation, despite the parents' objection, and placed J.H. in special education classes for these subjects.  At the request of J.H's parents, a due process hearing was conducted in May by a hearing officer to hear J.H.'s challenge to the ARDC's placement decision.  In June 2010, the hearing officer found that the school's proposed placement in a special education classroom for these subjects was appropriate under IDEA.  The hearing officer specifically found that the testimony of J.H.'s teachers was reliable and convincing.

J.H. then appealed to the federal district court and both parties moved for summary judgment.  The magistrate judge to whom the motions were referred issued a highly detailed memorandum recommending that the district court grant summary judgment for the school district, based on her conclusion that J.H. had received no academic benefit from mainstream social studies and science classes. Neither party objected to the magistrate judge's recommendations. The district judge adopted the magistrate's recommendation and entered final judgment granting summary judgment for the school district in September 2011.

## II.

## ANALYSIS

### A.  *Standard of Review*

On appeal from an administrative hearing to the district court, the district court must accord "due weight" to the hearing officer's findings, but also must review the evidence and must "reach an independent decision based on the preponderance of the evidence." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5 Cir. 2010) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5 Cir. 1997)).  The district court's standard of review in these cases is "virtually de novo." *R.H.*, 607 F.3d at 1010.

No. 11-20718

The school district's plan is presumed to be appropriate. "The role of the judiciary is not to second-guess the decisions of school officials or to substitute their plans for the education of disabled students with the court's." *R.H.*, 607 F.3d at 1010 (citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5 Cir. 1996)). The only question is whether the school officials complied with IDEA. *R.H.*, 607 F.3d at 1010. The party attacking the plan bears the burden of proof, by a preponderance of the evidence, of demonstrating why it does not comply with the statute. *Id.* at 1010-11.

This court typically reviews a grant of summary judgment *de novo*, applying the same standards as the district court. However, because the appellant failed to object to the magistrate judge's report and recommendation adopted by the district court in its summary judgment ruling, review here is for plain error. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (*en banc*). Therefore the appellant must show that the district court plainly erred in finding that the plaintiffs presented no evidence that would raise a material issue of fact that the educational plan was inappropriate.

## B. *IDEA*

The Individuals with Disabilities Education Act (IDEA) requires that school districts in states receiving federal funds implement procedures and policies that assure that each disabled student receives a "free appropriate public education," or "FAPE." *See* 20 U.S.C. §§ 1400(d)(1)(A), 1412(a), 1415(a); *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044 (5th Cir. 1989). In order to ensure that each student receives a FAPE, parents and school districts collaborate to develop an Individualized Education Plan ("IEP") that is "reasonably calculated to enable the child to receive educational benefits." 20 U.S.C. § 1400 (d)(1)(A); *R.H. v. Plano Indep. School Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010).

No. 11-20718

One of the primary goals of IDEA is "mainstreaming." *Daniel R.R.*, 874 F.2d at 1044, 1045. An IEP must place a disabled child in the "least restrictive environment" ("LRE") required by his needs. *R.H.*, 607 F.3d at 1008. That is, a disabled child should be placed in special classes only when education in regular classes with the use of supplementary services cannot be achieved satisfactorily. 20 U.S.C § 1412)(a)(5)(A); *see Daniel R.R.*, 874 F.2d at 1039. Main streaming is the primary issue in this case. The appellants argue that placing J.H. in special classrooms for social studies and science would be an unnecessarily restrictive method of accommodating his disability, and that his educational goals would be better met in mainstream classes.

In affirming the hearing examiner, the appellants argue that the district court incorrectly applied the standard established in *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036 (5th Cir. 1989) to the facts in this case. *Daniel R.R.* generally stands for the proposition that "schools must retain flexibility in educational planning" in order to address each child's needs, emphasizing the importance of balancing Congress's strong preference for "main streaming" with the reality that general education is not suitable for all disabled students. *Daniel R.R.* at 1044, 1045. The court adopted a two-part test for evaluating a school's proposed educational program, asking first "whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily," and, if not, "whether the school has mainstreamed the child to the maximum extent appropriate." *Daniel R.R.* at 1048. To that end, the court suggested that several factors be considered, including: 1) the steps taken by a school to accommodate the disabled child in general education, 2) the extent to which the student receives an educational benefit from general education, and 3) the effect the disabled student has on the general education population. *Id.* at 1048-49.

No. 11-20718

The appellants argue that the *Daniel R.R.* factors weigh in their favor because J.H. did not interfere with other students' education, and because he received an educational benefit in the mainstream classroom. Based upon our review of the record, the factors heavily support the district court's conclusion.

As to the first factor, all testimony suggests that the school provided a great deal of accommodation for J.H. in the general education program. He was assisted by aides at all times. His teachers provided assignments that were modified up to 100 percent to accommodate his skill level. The independent experts, Dr. Brams, Dr. Simione, and Dr. Johnson each noted that J.H. received individualized instruction and attention in his mainstream classes.

As to the second factor, there is ample testimony in the record supporting the district court's conclusion that J.H. was not receiving an educational benefit from general education in these two courses. In every meeting and report issued during J.H.'s sixth grade year, his teachers noted that the curriculum's increasing difficulty was frustrating and overwhelming for J.H. He was unable to pay attention in class and refused to comply with simple directions. As the classes became more difficult, J.H.'s behavior problems increased in frequency. His teachers testified that J.H. refused to begin assignments when asked, needed constant help and prompting to complete his work, and at times became so frustrated that he completely shut down and refused to work at all.

Witnesses also testified to the gap between J.H.'s IEP objectives and the general education curriculum. As Dr. Brams testified, J.H. was simply unable to grasp the concepts being presented in mainstream classes in science and social studies. J.H.'s teachers supported that conclusion, testifying that his assignments had to be 100 percent modified.

In accord with its emphasis on the importance of maximization, *Daniel R.R.* instructs us to consider the non-academic benefits that a child derives from mainstream education as well as academic benefits. *Daniel R.R.*, 874 F.2d at

1049 ("[A]cademic achievement is not the only purpose of mainstreaming."). A student may derive nonacademic benefit from interacting with nonhandicapped peers in mainstream classes. Although he was in the mainstream science and social studies classes, J.H. was taught separately by teaching assistants and tutors and followed an entirely modified curriculum. His teachers and the experts who observed him agreed that J.H. became withdrawn and frustrated in the classroom, and tended to shut down as the academic assignments became more difficult. His opportunity to interact with his nonhandicapped peers in those classes was thus seriously limited, which supports the district court's conclusion that J.H. did not derive any significant nonacademic benefit from placement in mainstream science and social studies classes.

As to the third factor, all evaluators and teachers seem to agree that J.H. did not disrupt the general education classroom, and at most was an occasional distraction to his classmates. However, the primary goal in crafting an IEP is to maximize the student's potential to achieve his educational objectives. The district court did not plainly err in concluding that J.H. received no educational benefit from mainstream classes. The fact that he did not disrupt his peers in those classes, while relevant, was much less important than the fact that he received no educational benefit.

The appellants argue that the proposed IEP fails to mainstream J.H. to the maximum extent appropriate. Schools are required to take incremental steps where appropriate in placing disabled students in general education classes. Incremental steps may include creating a program that involves both mainstream and special education courses. *Daniel R.R.* at 1050. The district court found that the proposed plan for J.H. combining regular education courses and special education courses would result in the maximum appropriate level of main streaming.

No. 11-20718

As support for their maximization argument, the appellants contend that the district court inappropriately compared J.H.'s abilities with the abilities of non-disabled students, rather than solely looking to J.H.'s capabilities and how those capabilities were being accommodated in mainstream classes. The appellants point to statements describing the teacher's frustrations with being unable to teach J.H. the full curriculum. The record does not support this argument. J.H.'s teachers and school psychologists described in detail the extent to which J.H. was unable to follow the curriculum even with adaptations and modifications, and the fact that his inability to follow the subject matter and discussion made him frustrated and noncompliant, which kept him from being able to advance academically.

More importantly, the record shows that the school district has taken the incremental approach required by the statute and our cases. The original IEP recommended that J.H. spend half of his classroom time in these subjects in special education classrooms, and half in general education classrooms. As J.H.'s difficulties in class increased, the school recommended incrementally greater time be spent in special education classrooms. The IEP being challenged here would remove J.H. from the mainstream classes with which he was having the most difficulty, but would not remove him from mainstream classes for the entire school day. J.H. will remain in the two mainstream classes in which he has had the greatest degree of success, Kickstart and Speech. He will also remain with his mainstream peers in activities, lunch, and special assemblies.

The appellants argue that the district court erred in relying on the testimony of J.H.'s teachers rather than on his report card and IEP progress data. The district court's grant of summary judgment was based on its adoption of the recommendations of the magistrate judge. The magistrate judge's recommendation considered at great length all of the evidence before the court, including the testimony of the expert witnesses. The appellants specifically

8

No. 11-20718

argue that the district court should have given greater weight to the fact that J.H. received passing grades on his report card. However, as the magistrate judge pointed out in the report and recommendation, J.H.'s report cards for the majority of the year stated that he was failing social studies and science. At some point, those grades were changed to Bs, but there is no evidence in the record explaining why J.H. would receive year-end Bs after failing each individual progress report, except the testimony of the teachers that they made accommodation to J.H. because of his disability. The magistrate report makes clear that the district court took the evidence into account and accorded it due weight in making its decision.

### III.  CONCLUSION

The district court did not commit error, plain or otherwise, in concluding that J.H. was receiving no educational benefit from the general education classroom in Science and Social Studies and that substituting life skills classes for general education classes in science and social studies was consistent with providing him a FAPE.

AFFIRMED.